FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND
2017 MAR 31 AM 10: 33
CLERK'S OFFICE
AT BALTIMORE
BY_____



U.S. Department of Justice

United States Attorney
District of Maryland

Paul E. Budlow
Assistant United States Attorney
Paul.Budlow@usdoj.gov

Suite 400
36 S. Charles Street
Baltimore, MD 21201-3119

DIRECT: 410-209-4917
MAIN: 410-209-4800
FAX: 410-962-3091

March 22, 2017

Nicholas Vitek, Esq.
Office of the Federal Public Defender
100 South Charles Street
Tower II, Suite 1100
Baltimore, Maryland 21201

Re: United States v. Joseph Goldman
Criminal #: MJG-17-009

Dear Mr. Vitek:

This letter, together with the Sealed Supplement, confirms the plea agreement which has been offered to the Defendant by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have him execute it in the spaces provided below. If this offer has not been accepted by Friday, March 24, 2015, at 5:00 p.m., it will be deemed withdrawn. The terms of the agreement are as follows:

### Offense of Conviction

1. The Defendant agrees to plead guilty to Count One of the Indictment now pending against him, which charges him with Unlawful Possession of Short-Barreled Shotgun in violation of 26 U.S.C. § 5841 & 5861. The Defendant admits that he is, in fact, guilty of that offense and will so advise the Court.

### Elements of the Offense

2. The elements of Count One (Unlawful Possession of Short-Barreled Shotgun) to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

   a. That on or about December 19, 2016, in the District of Maryland, and elsewhere, the Defendant had possession of a firearm;

   b. That the Defendant had knowledge that what he was possessing was a firearm;

1

c. That this firearm was not registered to the Defendant in the National Firearms Registration and Transfer Record; and

d. That the Defendant knew that the barrel of the firearm was less than 18 inches.

### Penalties

3. The maximum sentence provided by statute for the offense to which the Defendant is pleading guilty is as follows: 10 years' imprisonment, a $250,000 fine, and up to three (3) years supervised release. In addition, the Defendant must pay $100 as a special assessment pursuant to 18 U.S.C. § 3013, which will be due and should be paid at or before the time of sentencing. This Court may also order him to make restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664. If a fine or restitution is imposed, it shall be payable immediately, unless, pursuant to 18 U.S.C. § 3572(d), the Court orders otherwise. The Defendant understands that if he serves a term of imprisonment, is released on supervised release, and then violates the conditions of his supervised release, his supervised release could be revoked - even on the last day of the term - and the Defendant could be returned to custody to serve another period of incarceration and a new term of supervised release. The Defendant understands that the Bureau of Prisons has sole discretion in designating the institution at which the Defendant will serve any term of imprisonment imposed.

### Waiver of Rights

4. The Defendant understands that by entering into this agreement, he surrenders certain rights as outlined below:

a. If the Defendant had persisted in his plea of not guilty, he would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

b. If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

c. If the Defendant went to trial, the government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in his defense, however, he would have the subpoena power of the Court to compel the witnesses to attend.

d. The Defendant would have the right to testify in his own defense if he so chose, and he would have the right to refuse to testify. If he chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from his decision not to testify.

e. If the Defendant were found guilty after a trial, he would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges against him. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

f. By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that he may have to answer the Court's questions both about the rights he is giving up and about the facts of his case. Any statements the Defendant makes during such a hearing would not be admissible against him during a trial except in a criminal proceeding for perjury or false statement.

g. If the Court accepts the Defendant's plea of guilty, there will be no further trial or proceeding of any kind, and the Court will find him guilty.

h. By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status. The Defendant recognizes that if he is not a citizen of the United States, pleading guilty may have consequences with respect to his immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including his attorney or the Court, can predict with certainty the effect of a conviction on immigration status. Defendant nevertheless affirms that he wants to plead guilty regardless of any potential immigration consequences.

## Advisory Sentencing Guidelines Apply

5. The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. §§ 3551-3742 (excepting 18 U.S.C. §§ 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

## Factual and Advisory Guidelines Stipulation

6. This Office and the Defendant understand, agree and stipulate to the Statement of Facts set forth in Attachment A hereto which this Office would prove beyond a reasonable doubt, and to the following applicable sentencing guidelines factors:

3

a. Pursuant to U.S.S.G. § 2K2.1(a)(5), the base offense level for Unlawful Possession of a Short-Barreled Shotgun is eighteen (18).

b. Pursuant to U.S.S.G. § 2K2.1(b)(1), there is a two (2) level increase because the offense involved three or more firearms. (Subtotal: 20).

7. This Office does not oppose a two-level reduction in the Defendant's adjusted offense level, based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for his criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional 1-level decrease in recognition of your client's acceptance of personal responsibility for his conduct. This Office may oppose any adjustment for acceptance of responsibility if the Defendant (a) fails to admit each and every item in the factual stipulation; (b) denies involvement in the offense; (c) gives conflicting statements about his involvement in the offense; (d) is untruthful with the Court, this Office, or the United States Probation Office; (e) obstructs or attempts to obstruct justice prior to sentencing; (f) engages in any criminal conduct between the date of this agreement and the date of sentencing; or (g) attempts to withdraw his plea of guilty.

8. Thus, the adjusted offense level is 17.

9. The Defendant understands that there is no agreement as to his criminal history or criminal history category, and that his criminal history could alter his offense level if he is a career offender or if the instant offense was a part of a pattern of criminal conduct from which he derived a substantial portion of his income.

10. This Office and the Defendant agree that with respect to the calculation of the advisory guidelines range, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines will be raised or are in dispute.

### Rule 11(c)(1)(C) Plea

11. The parties stipulate and agree pursuant to Fed. R. Crim. P. 11(c)(1)(C) that a sentence of **no more than twenty-four (24) months imprisonment** is the appropriate disposition of this case. For the purposes of this agreement, incarceration is a sentence to the Bureau of Prisons, and does not include any form of home confinement. This agreement does not affect the Court's discretion to impose any lawful term of supervised release or fine or to set any lawful conditions of probation or supervised release. In the event that the Court rejects this plea agreement, either party may elect to declare the agreement null and void. Should the Defendant so elect, he will be afforded the opportunity to withdraw his plea pursuant to the provisions of Federal Rule of Criminal Procedure 11(d)(2)(A). The parties agree that if the Court finds that the defendant engaged in obstructive or unlawful behavior and/or failed to acknowledge personal responsibility as set forth herein, neither the Court nor the government would be bound by the specific sentence or sentencing range contained in this paragraph and the defendant would not be able to withdraw his plea.

### Obligations of the United States Attorney's Office

12. At the time of sentencing, this Office will recommend a sentence of eighteen months incarceration, and will move to dismiss any open counts against the Defendant.

13. The parties reserve the right to bring to the Court's attention at the time of sentencing, and the Court will be entitled to consider, all relevant information concerning the Defendant's background, character and conduct.

### Collection of Financial Obligations

14. The Defendant expressly authorizes the U.S. Attorney's Office to obtain a credit report in order to evaluate the Defendant's ability to satisfy any financial obligation imposed by the Court.

15. In order to facilitate the collection of financial obligations to be imposed in connection with this prosecution, the Defendant agrees to disclose fully all assets in which the Defendant has any interest or over which the Defendant exercises control, directly or indirectly, including those held by a spouse, nominee or other third party.

16. The Defendant will promptly submit a completed financial statement to the United States Attorney's Office, in a form this Office prescribes and as it directs. The Defendant promises that the financial statement and disclosures will be complete, accurate and truthful, and understands that any willful falsehood on the financial statement will be a separate crime and may be punished under 18 U.S.C. § 1001 by an additional five years' incarceration and fine.

### Forfeiture

17. Your client agrees to forfeit all right, title and interest in the property seized by law enforcement authorities from his residence on December 19, 2016. He further agrees to take whatever steps are necessary to pass clear title to the property to the United States or any State authority. Those items include, but are not limited to:

    a. a Mossberg 12-gauge shotgun, serial number U487995;
    b. a 556 AR-15 rifle, without a serial number;
    c. a Silver 6.5-inch homemade silencer, without a serial number;
    d. a Springfield XD handgun, serial # US716278;
    e. a Sig Sauer handgun, serial # 248151397; and
    f. Various firearms and silencer parts.

### Waiver of Appeal

18. In exchange for the concessions made by this Office and the Defendant in this plea agreement, this Office and the Defendant waive their rights to appeal as follows:

    a. The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or otherwise, to appeal the Defendant's conviction.

b. Nothing in this agreement shall be construed to prevent the Defendant or this Office from invoking the provisions of Federal Rule of Criminal Procedure 35(a), or from appealing from any decision thereunder, should a sentence be imposed that resulted from arithmetical, technical, or other clear error.

c. The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

d. The Defendant further waives any and all motions, defenses, probable cause determinations, objections which defendant could assert to the indictment or to the Court's entry of judgment against the Defendant, and any imposition of sentence upon the Defendant consistent with this agreement. If Defendant files a notice of appeal, notwithstanding this agreement, Defendant agrees that this case shall be remanded to the district court to determine whether Defendant is in breach of this agreement and, if so, to permit the United States to withdraw from the plea agreement.

## Obstruction or Other Violations of Law

19. The Defendant agrees that he will not commit any offense in violation of federal, state or local law between the date of this agreement and his sentencing in this case. In the event that the Defendant (i) engages in conduct after the date of this agreement which would justify a finding of obstruction of justice under U.S.S.G. § 3C1.1, or (ii) fails to accept personal responsibility for his conduct by failing to acknowledge his guilt to the probation officer who prepares the Presentence Report, (iii) files a motion to withdraw his guilty plea, or (iv) commits any offense in violation of federal, state or local law, then this Office will be relieved of its obligations to the Defendant as reflected in this agreement. Specifically, this Office will be free to argue sentencing guidelines factors other than those stipulated in this agreement, and it will also be free to make sentencing recommendations other than those set out in this agreement. As with any alleged breach of this agreement, this Office will bear the burden of convincing the Court of the Defendant's obstructive or unlawful behavior and/or failure to acknowledge personal responsibility by a preponderance of the evidence. The Defendant acknowledges that he may not withdraw his guilty plea because this Office is relieved of its obligations under the agreement pursuant to this paragraph. The Defendant acknowledges that he may not withdraw his guilty plea--even if made pursuant to Rule 11(c)(1)(C) -- if the Court finds that the defendant engaged in obstructive or unlawful behavior and/or failure to acknowledge personal responsibility. In that event, neither the Court nor the government would be bound by the specific sentence or sentencing range agreed and stipulated to herein pursuant to 11(c)(1)(C).

## Entire Agreement

20. This letter supersedes any prior understandings, promises, or conditions between this Office and the Defendant and, together with the Sealed Supplement, constitutes the complete plea agreement in this case. The Defendant acknowledges that there are no other agreements, promises, undertakings or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement and none will be entered into unless in writing and signed by all parties.

If the Defendant fully accepts each and every term and condition of this agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Rod J. Rosenstein
United States Attorney

By: _____
Paul E. Budlow
Assistant United States Attorney

I have read this agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

20170323
Date

_____
Joseph Goldman

I am Joseph Goldman's attorney. I have carefully reviewed every part of this agreement, including the Sealed Supplement, with him. He advises me that he understands and accepts its terms. To my knowledge, his decision to enter into this agreement is an informed and voluntary one.

3/23/17
Date

_____
Nicholas Vitek, Esq.

7

## Attachment A

*The undersigned parties hereby stipulate and agree that the following facts are true and accurate, and that if this matter had gone to trial, the government would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter gone to trial.*

Joseph Goldman ("Goldman"), age 35, is a resident of Baltimore, Maryland. As detailed below, Goldman made and possessed firearms in violation of the National Firearms Act ("NFA"). Specifically, Goldman sawed off the barrel of a shotgun, made a short barreled rifle without a serial number, and made a silencer for the rifle. Despite knowing the length of the firearms and the purpose of the silencer, Goldman did not register these items with the National Firearms Registration and Transfer Record.

On December 19, 2016, a search warrant was executed at Goldman's residence at 3501 Taney Road, Baltimore, Maryland. During the execution of the search warrant, the following items were seized:

### 556 AR-15 Type Rifle:

A 556 AR-15 type rifle, without a serial number, with a barrel length of approximately 7 ¾ inches, was recovered from behind the couch in the living room. The rifle was painted green camouflage. The firearm was modified in a way designed to cause it to operate as a machine gun, although the modification was not successful. Specifically, the receiver was modified to accept an M16 machinegun automatic sear pin – holes were drilled in the left and right receiver walls. The holes were drilled in the incorrect location for the firearm to accept the sear pin. The following machinegun fire-control components were installed in the receiver: hammer; trigger, and selector. Additionally, the upper assembly contains an M16-type machinegun bolt carrier. The rifle was test fired and determined to be an operational, semi-automatic, magazine-fed rifle.

Title 26, U.S.C. § 5842 of the NFA requires the rifle to bear a serial number. The rifle, having a barrel of less than 16 inches in length, is a "short-barreled rifle" as defined in 18 U.S.C. § 921 (a)(8). Goldman purchased the materials and assembled the 556 AR-15 type rifle, and did not register the rifle as required by 18 U.S.C. § 5861 of the NFA.

### Silencer:

A metal, approximately 6 ½-inch homemade silencer, without a serial number, was attached to the AR-15 type short barreled rifle at the time of seizure. The silencer was wrapped in green camouflage cloth. The silencer was a cylindrical metal device which was threaded on both ends, and a cap with a center drilled hole on the front end. Inside the device were a series of baffles, spacers, and other sound dampening items. The silencer was examined and test fired while attached to a firearm, and it was determined that the device was designed to reduce the sound report of a firearm, and that the device did in fact reduce the sound report of a firearm. The silencer meets the definition of a silencer as defined in 18 U.S.C. § 921 (a) (24) and is therefore a silencer as defined in 26 U.S.C. § 5845(a)(7).

1

The silencer did not have a serial number as required by Title 26, U.S.C. § 5842 of the NFA. Goldman made the silencer and did not register it as required by 18 U.S.C. § 5861 of the NFA.

Short Barreled Shotgun:

A Mossberg 12-gauge shotgun, serial number U487995, with a barrel length of 15 5/8 inches, was recovered from Goldman's bedroom on the second floor. Goldman had cut the shotgun's barrel muzzle and cut the shoulder stock of the shotgun into a pistol grip. The shotgun was test fired and determined to be operational.

Goldman purchased the Mossberg 12-gauge shotgun, and cut the barrel and the stock from the firearm. Goldman did not register the firearm as required by 18 U.S.C. § 5861 of the NFA.

Additional Items Seized:

The following items were recovered from the basement on a work bench next to a drill press:

➢ Various silencer parts, including 3 machined silencer baffles in various stages of completion, 2 additional silencer baffles with (one with the center hole drilled and one with the center hole marked), and one silencer end-cap. Baffles in firearms silencers create expansion chambers, and are instrumental in the process of silencing, muffling, or diminishing the report of a firearm. These items all meet the definition of a silencer, and are required to be registered by the NFA;

➢ Various parts of another AR-type rifle in the process of being made and assembled; and

➢ Various parts for the making/assembling of an automatic firearm, including a M12-type automatic sear assembly, spring, and sear pin.

During the execution of the warrant, Goldman admitted to possessing all of the items mentioned above. Specifically, Goldman stated that he assembled the AR-15 type short barreled rifle, made the silencer, and purchased and modified the shotgun. Goldman also stated that he ~~had taken~~ was Taking the items ~~and fired~~ to a gun range them.

I have reviewed the foregoing statement of facts with my attorney, understand it, agree with it, and do not wish to change any part of it. I further understand that it is included as part of my plea agreement with the government in this case

_____    20170324
Joseph Goldman                Date

2

I am Mr. Goldman's attorney. I have carefully reviewed the statement of facts with him.

_____
Nicholas Vitek, Esq.
Counsel for Joseph Goldman